UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

MICHAEL ANDREW SCUTERI,       )
                                         )
             Plaintiff,        )
                                         )
            v.          )     No. 2:23-cv-00103-MJD-JMS
                                         )
PABLO PEREZ,             )
JADE REEDY,              )
CENTURION HEALTH SERVICES, LLC,   )
                                         )
            Defendants.     )

**ORDER GRANTING DEFENDANT REEDY'S
MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Jade Reedy's Motion for Summary

Judgment. [Dkt. 225.] For the reasons explained below, the motion is **GRANTED**.

**I. Legal Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because

there is no genuine dispute as to any material fact and, instead, the movant is entitled to

judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary

judgment, the Court views the record and draws all reasonable inferences from it in the light

most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565,

572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary

judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827

(7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P.

56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

The Seventh Circuit has "repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions." *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009). That is the case here. The Southern District of Indiana's Local Rule 56-1 will be enforced.

## II. Background

In May 2021, Plaintiff led police on a high-speed chase and crashed into a retaining wall. [Dkt. 226-1 at 7; Dkt. 245-1 at 197-98.]  He was hospitalized, transported to a county jail, and later transported to an intake facility at the Indiana Department of Correction.  [Dkt. 226-1 at 7.] He arrived at Putnamville Correctional Facility on December 10, 2021, which is where the events giving rise to this lawsuit occurred.  *Id.*; [Dkt. 234-3 at 25.]

Shortly after arriving at Putnamville, Plaintiff was given a job in the prisoners' dining room.  [Dkt. 226-1 at 15-16.]  This was a physically demanding job that required him to lift up to seventy pounds.  *Id.* at 17.  In that role, he helped prep, cook, serve, and clean up meals for his fellow prisoners.  *Id.*

Sometime in January 2022, Plaintiff told his Unit Team Manager, Defendant Jade Reedy, that he was unable to work due a broken back and neck.  *Id.* at 14-15.  Reedy told Plaintiff that work assignments were mandatory and asked if he had medical records to prove his injuries.  *Id.* Plaintiff showed Reedy his hospital records from May 2021, which indicated that he had suffered

a vertebral fracture during the car crash. *Id.*; [Dkt. 245-1 at 197-98.] Reedy asked Plaintiff what the prison doctor said about his injuries and his ability to work, but Plaintiff had not yet seen the prison doctor at that time. [Dkt. 226-1 at 15.] Reedy told Plaintiff that the prison doctor decides whether a prisoner may receive a work exemption for a medical condition, and that he needed to see the prison doctor to request a work exemption. *Id.* In the meantime, Reedy told Plaintiff that he needed to keep working his assigned job in the prisoners' dining room, and if he refused to work, he would be sent to solitary confinement. *Id.* Plaintiff kept working and at some point later on asked Reedy "multiple times" to excuse him from work, but Reedy refused each request. *Id.* at 20.

Plaintiff saw the prison doctor in February 2022. *Id.* at 30; [Dkt. 234-3 at 35.] During that appointment, the prison doctor said he would order an x-ray of Plaintiff's spine, review the x-ray, and decide whether to grant Plaintiff a work exemption. *Id.* For reasons that are unclear from the record, this x-ray was not performed for another fourteen months, at which time Plaintiff was no longer working. [Dkt. 234-1 at ¶ 7.]

Plaintiff continued to work the morning shift in the prisoners' dining room until March 2022. *Id.* at 20. Reedy then reassigned him to a job cleaning a dormitory, which was also physically demanding. *Id.* at 21. Plaintiff held that job until June 2022, at which point he "got into a fight with an officer" and was placed in solitary confinement for about three months. *Id.* at 22. Plaintiff did not receive another work assignment for more than two years. *Id.* at 23. Plaintiff states that working in the prisoners' dining room and the dormitory were difficult for him because of his injuries, which were painful and prevented him from standing for more than two minutes at a time. *Id.* at 17-18.

3

Reedy states in an affidavit that he is "not a medical provider or professional" and that he cannot make decisions about a prisoner's medical care. [Dkt. 226-2 at ¶ 2.] Instead, like all correctional employees at the prison, he defers to the prison's medical staff "regarding any decision which implicates or impacts" a prisoner's health status. *Id.* Reedy does not have access to the prisoners' medical records and may not recommend that a prisoner be exempted from work without written documentation from the medical staff. *Id.* at ¶¶ 9-10. He directs all prisoners seeking a work exemption to coordinate their requests directly with the medical staff. *Id.* at ¶ 11. Reedy never received documentation from the medical staff indicating that Plaintiff should be medically exempted from working. *Id.* at ¶ 13. Reedy also states that he "never had any reason to believe [Plaintiff] was not receiving appropriate medical care" at the prison. *Id.* at ¶ 14.

### III. Discussion

Having reviewed the Parties' briefs and relevant portions of the record, the Court finds there is no genuine dispute of material fact and that Defendant Reedy is entitled to judgment as a matter of law.

Plaintiff alleges that Reedy was deliberately indifferent to his limitations and medical condition when he refused to provide him with accommodations in his work assignment. It is well-established that "[t]he Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations omitted). Thus, prison officials may not act with deliberate indifference to a prisoner's serious medical needs. *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022). To succeed on a deliberate indifference claim, a prisoner must show (1) that he had an objectively serious medical need; (2) to which the defendant was deliberately indifferent. *Id.* Deliberate indifference is a subjective standard and requires the defendant to actually know of and disregard

4

a substantial risk of harm to the prisoner. *Id.* This is a high bar "because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Id.* "[M]ere negligence" or even civil "objective recklessness" simply "is not enough." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016); *see also Farmer*, 511 U.S. at 836–38. An "official's failure to alleviate a significant risk that he should have perceived but did not" is not deliberate indifference. *Farmer*, 511 U.S. at 838.

The Court assumes for purposes of this Order that Plaintiff's back injury was a serious medical need during the time relevant to his claim against Reedy. Plaintiff has submitted medical records showing that he suffered a vertebral fracture during his car accident, and he testified at his deposition that this injury was painful and prevented him from standing for more than two minutes at a time, which significantly impacted his ability to perform his physically demanding jobs. [Dkt. 226-1 at 17-18; Dkt. 245-1 at 197-98.]

Plaintiff's claim against Reedy fails, however, because he has not shown that Reedy actually knew that performing these assigned work duties caused Plaintiff significant pain. The evidence shows that Reedy reviewed Plaintiff's hospital records from May 2021, which showed that he had a vertebral fracture at that time. [Dkt. 226-1 at 14-15; Dkt. 245-1 at 197-98.] But as Reedy points out, he is not a medical professional and is not qualified to assess a prisoner's medical fitness to work simply by reviewing hospital records that were more than eight months old. Reedy was also allowed to defer to the prison medical staff's professional judgment with respect to Plaintiff's ability to work, particularly because this deference was required by prison policy. *See Zemlick v. Burkhart*, 164 F.4th 1004, 1012 (7th Cir. 2026) (collecting cases holding that non-medical correctional staff may defer to the judgments of

5

medical professionals, and that prisons may employ a "division of labor" between medical and non-medical staff).

To be sure, a prison official may not blindly defer to the medical staff when he knows the medical staff has completely ignored a prisoner's serious medical need, nor may a prison official turn a blind eye to an obvious medical need that precludes a prisoner from completing his job duties (*e.g.*, requiring a prisoner to continue performing a physically demanding job with a visibly dislocated shoulder, or requiring a wheelchair-bound prisoner to perform work that requires standing).  *See also Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015)  (non-medical prison officials may be liable for ten-month delay in treating a torn ligament in a prisoner's hand because the complaint alleged they had actual knowledge of the injury and actual knowledge of the medical staff's persistent failure to provide necessary care).  But in this case, Plaintiff has not shown that Reedy had actual knowledge of such an obvious medical condition or of obvious medical neglect.  In his response brief, Plaintiff states that he "attempted to perform [his] work [assignments] despite experiencing significant pain and was forced to sit while trying to clean dishes due to his inability to stand for extended periods.  Defendant Reedy observed Plaintiff's difficulties and characterized him as 'a very poor worker.'"  [Dkt. 245 at 2.]  Plaintiff does not support this factual assertion with a citation to admissible evidence in the record.  *Id.*  This failure violates S.D. Ind. Local Rule 56-1(e), which states that "a party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence."  *Patterson*, 589 F.3d at 360 (a court's local rules may be strictly enforced).  Thus, Plaintiff has not put forth evidence that Reedy directly observed him struggle to perform his assigned job duties or otherwise had direct knowledge of his painful medical condition.  Similarly, Plaintiff asserts that "[i]t was more than a year before any diagnostic

testing (an x-ray) was performed on Plaintiff [at his facility.]"[1]  [Dkt. 245 at 3.]  However, Plaintiff does not assert that Reedy had actual knowledge of the delay regarding his x-rays during the relevant time period for the claims against Reedy, which is January 2022 to June 2022, after which time Plaintiff was no longer assigned to work duties of any sort.  [Dkt. 226-1 at 23.]  Thus, he has not shown that Reedy had actual knowledge of the medical staff's alleged failure to assess Plaintiff's ability to perform his assigned work duties.  Finally, Plaintiff makes other assertions against Reedy for initiating disciplinary actions against him for refusing to work, but these assertions are also unsupported by citations to the admissible evidence in the record in violation of Local Rule 56-1(e) and therefore do not create a genuine issue of material fact.  [Dkt. 245 at 2.]

In this case, the evidence on summary judgment shows that Reedy reviewed old hospital records indicating that eight months earlier, Plaintiff suffered a vertebral fracture from a car crash.  Reedy then told Plaintiff that he would need to obtain a work exemption from the prison doctor to be relieved of his job duties.  Plaintiff saw the prison doctor shortly thereafter.  There is no evidence that Reedy was made aware of a work exemption for Plaintiff but ignored it, that he knew of any unnecessary delays in x-rays or other diagnostics that might have supported a work exemption, or that he directly observed Plaintiff struggle to perform his work duties due to an obvious medical condition.  Accordingly, Reedy followed prison policy and did not recommend exempting Reedy from his assigned work duties because such recommendations are left to the prison medical staff.  The record on summary judgment does not support a reasonable inference

---

[1] Again, Plaintiff does not include a citation to admissible evidence in the record for this assertion, in violation of S.D. Ind. Local Rule 56-1(e), but the Court is aware of this evidence due to its review of a contemporaneously filed Motion for Summary Judgment by the Medical Defendants.  *See* [Dkt. 233.]

that Reedy was deliberately indifferent to Plaintiff's spine injury, and Reedy's Motion for

Summary judgment is therefore **GRANTED**.

### IV. Conclusion

For the reasons explained above, Defendant Reedy's Motion for Summary Judgment,

[Dkt. 225], is **GRANTED**, and the claims against him are **DISMISSED WITH PREJUDICE**.

The **Clerk is directed to terminate** Defendant Reedy on the docket.

SO ORDERED.

Dated:  30 MAR 2026

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email