UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

MICHAEL ANDREW SCUTERI,          )
                                 )
          Plaintiff,             )
                                 )
     v.                          )          No. 2:23-cv-00103-MJD-JMS
                                 )
PABLO PEREZ,                     )
JADE REEDY,                      )
CENTURION HEALTH SERVICES, LLC,  )
                                 )
          Defendants.            )

**ORDER GRANTING IN PART AND DENYING IN PART
MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on the motion for summary judgment filed by Defendants

Dr. Pablo Perez and Centurion Health Services, LLC ("Medical Defendants").  [Dkt. 233.]

For the reasons explained below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I. Legal Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because

there is no genuine dispute as to any material fact and, instead, the movant is entitled to

judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary

judgment, the Court views the record and draws all reasonable inferences from it in the light

most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565,

572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary

judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827

(7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P.

56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

## II. Background

In May 2021, Plaintiff led police on a high-speed chase and crashed into a retaining wall. [Dkt. 226-1 at 7; Dkt. 245-1 at 197-98.]  He was hospitalized, transported to a county jail, and later transported to an intake facility at the Indiana Department of Correction ("IDOC"). [Dkt. 226-1 at 7.]  He arrived at Putnamville Correctional Facility on December 10, 2021, which is where the majority of the events giving rise to this lawsuit occurred.  *Id.*; [Dkt. 234-3 at 25].

The operative complaint alleges that Plaintiff has not received adequate medical care for his spinal injuries at IDOC.  [Dkt. 30 at 3.]  His injuries from the May 2021 car crash included a fracture of his L2 vertebra.  [Dkt. 234-3 at 61-62.]  He also has chronic pain due to osteoarthritis at the L5-S1 vertebrae, thoracic spondylosis, minimal stenosis in his C6-C7 vertebrae with no cord compression, osteophytosis (bone spurs) throughout the spine, and reversal of the normal lordosis (curve of the spine) consistent with muscle spasm.  *Id.*; [Dkt. 234-4 at 160].

Defendant Centurion Health Services LLC was the medical provider for IDOC during the time relevant to this lawsuit.  *See generally* [Dkt. 234-2].  Defendant Dr. Pablo Perez was employed by Centurion as the prison doctor for Putnamville Correctional Facility during that same period.  [Dkt. 234-1 at ¶ 2.]

During his deposition, Plaintiff described the alleged deficiencies with respect to the medical care he received from Centurion for his spinal injuries.  [Dkt. 226-1 at 31-34.]

These alleged deficiencies include confiscating his back brace upon his arrival at IDOC, failing to send him to outside medical providers, failing to provide him with a bottom bunk pass, failing to provide him with a medical lay-in, delaying x-rays of his back for over a year, and failing to provide him with pain medication. *Id.* He also testified during his deposition that he only saw Dr. Perez at about five appointments in four years and that Dr. Perez never addressed his medical issues during these appointments.[1] *Id.* at 35. He testified that his pain is significant, that it keeps him up at night, and that he is unable to stand for more than two minutes at a time. *Id.* at 17-18, 43-44.

IDOC correctional staff will confiscate a prisoner's medical device, such as a back brace, if there is a concern that the medical device could be used as a weapon. [Dkt. 252-4 at 7.] For this reason, medical devices containing metal are often confiscated. *Id.* There is no evidence that Dr. Perez or another Centurion employee confiscated Plaintiff's back brace or other medical device. A licensed practical nurse provided Plaintiff with a 30-day medical lay-in on February 15, 2022, but there is no evidence that this medical lay-in was later renewed or that Plaintiff received a bottom bunk pass. [Dkt. 234-3 at 34.]

Dr. Perez first met Plaintiff at a medical appointment on February 21, 2022. [Dkt. 234-1 at ¶ 6.] During this appointment, Dr. Perez and Plaintiff discussed his spinal injuries, and Dr. Perez said that Centurion would obtain his pre-incarceration hospital records. *Id.* After conducting a physical examination, Dr. Perez ordered ibuprofen 600 mg three times daily for two months and ordered x-rays of the lumbar spine. *Id.* However, the x-rays that Dr. Perez ordered during this visit were not performed. *Id.* at ¶ 7. Dr. Perez does not know the reason for this

---

[1] Plaintiff also testified that he did not receive adequate medical care for other needs, such as acid reflux and hypothyroidism. [Dkt. 226-1 at 31-34.] However, those medical conditions do not appear in the operative complaint, and Plaintiff's response brief does not argue that those medical conditions present genuine issues of material fact for trial. *See generally* [Dkts. 30, 251].

failure. *Id.* Dr. Perez renewed Plaintiff's ibuprofen prescription for another two months on May 2, 2022. *Id.* at ¶ 9. That ibuprofen prescription terminated on June 30, 2022. [Dkt. 234-3 at 45.]

Centurion received Plaintiff's post-crash hospital records in December 2022. [Dkt. 234-1 at ¶ 11.] Those records show that Plaintiff suffered an L2 vertebral fracture during the May 2021 car crash, that he received Tylenol and hydrocodone for pain, and that a neurosurgeon opined that the fracture could be treated conservatively with or without a back brace. [Dkt. 234-3 at 57-63.] Those records also showed that Plaintiff had chronic, degenerative spinal injuries that were not caused by the May 2021 car crash. *Id.* at 62-63.

Dr. Perez next saw Plaintiff on February 16, 2023. *Id.* at ¶ 12. After performing a physical exam of Plaintiff's neck and back, Dr. Perez prescribed Tylenol Extra Strength 500 mg three times a day for thirty days to treat his back and neck pain. *Id.* Dr. Perez also renewed his order for x-rays of Plaintiff's spine. *Id.* Those x-rays were performed on April 6, 2023, and according to Dr. Perez showed "multilevel degenerative disc disease worst at L5-S1, degenerative changes, and mild compression of L2, age indeterminate. This was consistent with the x-rays he had following his car accident and showed that the previous fracture at L2 was healed." *Id.* at ¶ 16. The x-rays of Plaintiff's cervical spine "showed disc space narrowing at C6-C7 and reversal of the normal lordosis consistent with muscle spasm." *Id.* at ¶ 17. Dr. Perez believed that these x-ray results "did not warrant the prescription of chronic pain medication stronger than the over the counter medication [Plaintiff] had received or could purchase from the Commissary." *Id.* at ¶ 18. Dr. Perez renewed Plaintiff's Tylenol prescription for another thirty days on April 4, 2023. *Id.* at ¶ 19. That prescription terminated on May 3, 2023. [Dkt. 234-5 at 167.]

Dr. Perez saw Plaintiff again during an appointment on January 20, 2025. *Id.* at ¶ 22. At that time, Dr. Perez renewed Plaintiff's Tylenol prescription following this Court's Preliminary Injunction.[2] [Dkt. 234-1 at ¶ 22.]

During his examinations of Plaintiff, Dr. Perez documented lumbar tenderness, reduced range of motion, and moderate pain with movement across multiple spinal regions.[3] [Dkt. 234-1 at ¶ 6; Dkt. 234-5 at 156.]

### III. Discussion

#### A. Centurion

Plaintiff is suing Centurion under the theory set forth in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Under *Monell*, a plaintiff may sue a municipality or company under 42 U.S.C. § 1983 for a policy or custom that directly caused a violation of a federal right if the municipality or company "took the action with conscious disregard for the known or obvious risk of the deprivation." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236 (7th Cir. 2021). "[W]here the policy relied upon is not itself unconstitutional, **considerably more proof than the single incident will be necessary in every case** to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Id.* (quoting *City of Okla. City v. Tuttle*,

---

[2] Dr. Perez also saw Plaintiff in March and April 2025 for medical issues that were unrelated to his back injuries. [Dkt. 234-1 at ¶¶ 24, 26.] Plaintiff had appointments with members of the nursing staff on December 10, 2021; May 24, 2022; June 15, 2022; September 14, 2022; April 19, 2023; March 1, 2024; and February 21, 2025. [Dkt. 234-1 at 25, 43, 50; dkt. 234-5 at 165, 179, 211.]

[3] In his affidavit and response brief, Plaintiff claims that Dr. Perez has never performed a physical examination on him. [Dkt. 251 at 3 (citing Dkt. 252-5 at ¶ 3).] But in that same response brief, Plaintiff states that Dr. Perez did perform physical examinations, which revealed pain, tenderness, and reduced range of motion. [Dkt. 251 at 2 (citing Dkt. 234-5 at 156.).] The Plaintiff cannot have it both ways. By relying on the results of these physical examinations in his response brief, Plaintiff has waived the ability to claim in an affidavit that these examinations never occurred. *See James v. Hale*, 959 F.3d 307, 311 (7th Cir. 2020) (holding that a "judge may disregard an affidavit that attempts to create a sham issue of fact").

471 U.S. 808, 824 (1985)  (emphasis added in *Dean*); *see also Calderone v. City of Chicago*, 979 F.3d 1156, 1164 (7th Cir. 2020)  (holding that a *Monell* claim arising from an as-applied challenge to a municipal policy requires evidence that the policy caused "a series of constitutional violations").

In this case, Plaintiff challenges Indiana Healthcare Services Directive 2.15A, which provides that "medications that are available on the IDOC Commissary for purchase," including Tylenol and ibuprofen, "are not supposed to be prescribed by the Centurion providers for more than 90 days **unless the patient has a serious medical need for the medication or the patient is indigent**."  [Dkt. 234-2 at ¶ 23 (emphasis added).]  Applying this IDOC policy to Plaintiff, Dr. Perez determined that Plaintiff did not have a serious medical need for Tylenol or ibuprofen, and for this reason Dr. Perez "did not continue to prescribe Tylenol to [Plaintiff] after [his] initial orders for it."  [Dkt. 234-1 at ¶ 29.]  Dr. Perez made this decision even though Plaintiff could not purchase Tylenol through the commissary in the specific dosages that Dr. Perez had previously prescribed; the commissary sells 325 mg tablets of Tylenol, rather than the 500 mg dosages that Plaintiff has been prescribed by Dr. Perez.[4]  [Dkt. 258-1 at ¶ 4.]  Plaintiff requested pain medication in April 2023, June 2023, and September 2023, but Centurion's health services administrator responded that he needed to purchase his pain medication from the commissary. [Dkt. 234-5 at 168, 170, 171.]

---

[4] The commissary does not sell 600 mg dosages of ibuprofen, which Plaintiff was prescribed in 2022, but it does sell 200 mg dosages of ibuprofen, which could be combined to create a 600 mg dosage and thus allow Plaintiff to comply with his earlier recommended treatment.  Unlike ibuprofen, the 325 mg dosages of Tylenol for purchase at the commissary cannot be easily combined to create a 500 mg dosage, which is what Dr. Perez prescribed.  [Dkt. 258-1 at ¶¶ 3-4.]

The Court finds that Indiana Healthcare Services Directive 2.15A is not unconstitutional on its face.  To be facially unconstitutional, the policy would have to be unconstitutional in "every conceivable application." *Robinson v. State of N.J.*, 806 F.2d 442, 446 (3d Cir. 1986). But by its own terms, the policy allows Centurion to provide prisoners with medication that they could otherwise purchase through the commissary if the prisoner is indigent or needs the medication to address a serious medical need.  The policy itself does not deprive prisoners of necessary medication to treat a serious medical need.  To the contrary, if the policy were applied as it is written, the policy could never result in a constitutional deprivation because having a serious medical need is an essential element of an Eighth Amendment medical claim.  *See*, *e.g.*, *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc).

Because the challenged policy is not facially unconstitutional, Plaintiff must show that Centurion's application of this policy, or its custom with respect to over-the-counter medications, has caused "a series of constitutional violations." *Calderone*, 979 F.3d at 1164.  But instead, Plaintiff relies solely on his own medical care; there is no evidence of any other prisoner's medical care in the record, and thus no evidence of "a series of constitutional violations" arising from Centurion's conduct.  Plaintiff tries to bypass his evidentiary burden by summarily stating that "Dr. Perez has been sued numerous times for medical care that he undertook while working for Centurion Health of Indiana, as well as its predecessor Co[r]izon Health and Wexford Health Services." [Dkt. 251 at 10.]  There are at least three problems with this argument.  First, Plaintiff has not identified a single lawsuit against Dr. Perez and has not asked the Court to take judicial notice of any specific lawsuit in this District.  His bare assertion that such lawsuits exist is not evidence and does not create a triable issue of fact.  Second, even assuming that Dr. Perez has been sued repeatedly while working for Centurion (a common issue for many physicians, and

7

especially physicians practicing in correctional settings), the existence of those lawsuits would not establish that Centurion has committed a series of constitutional violations; the existence of such lawsuits would merely show that Dr. Perez has been sued numerous times without establishing that any of those lawsuits had merit.  Finally, there is no indication that Dr. Perez or Centurion has been sued numerous times for violating the specific policy or custom that Plaintiff challenges in this lawsuit.  Accordingly, there is no evidence that Centurion's application of Indiana Healthcare Services Directive 2.15A or its custom with respect to over-the-counter medications has caused a series of constitutional violations, and Plaintiff's *Monell* claim therefore fails.  Based on the evidence in the summary judgment record, no reasonable jury could find in favor of Plaintiff against Centurion.  Accordingly, Centurion's Motion for Summary Judgment is **GRANTED**.

### B.  Dr. Perez

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). However, "not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" *Eagan v. Dempsey*, 987 F.3d 667, 688 (7th Cir. 2021) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  "To determine if the Eighth Amendment has been violated in the prison medical context, we perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021).

8

As to the first element, a "medical condition is serious if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (internal quotations removed). The failure to treat a prisoner's "non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). However, a medical provider's "refus[al] to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996).

Here, the Parties dispute whether Plaintiff's spinal pain amounts to a serious medical condition. The Medical Defendants concede that Plaintiff suffered a vertebral fracture in May 2021 but argue that "[w]hen [Plaintiff] entered IDOC 6 months later, and then Putnamville one month after that, his back fracture was in the past. Multiple x-rays taken in April 2023 showed [Plaintiff's] lumbar fracture healed and that his only real condition was normal wear and tear on the spine due to age and activity." [Dkt. 234 at 29.]

As an initial matter, the evidence does not show that Plaintiff's vertebral fracture had healed by the time he entered IDOC six months after the car crash. An x-ray was ordered in February 2022, but for reasons that Dr. Perez cannot explain, no x-rays of Plaintiff's spine were actually performed for another fourteen months. By that point, which was almost a year and a half after Plaintiff entered IDOC and fourteen months after his first appointment with Dr. Perez, Plaintiff's vertebral fracture had in fact healed. But this long-delayed x-ray does not prove when

exactly Plaintiff's vertebral fracture healed and certainly does not prove that it had already healed by the time he first met Dr. Perez.

Further, it is true that mild back pain is a largely unavoidable fact of middle age, and that injuries such as "a tiny scratch or a mild headache or minor fatigue" do not entitle a prisoner to medical care under the Eighth Amendment. Cooper, 97 F.3d at 916. But the evidence in this case goes beyond what Dr. Perez's summary judgment brief calls "normal wear and tear on the spine[.]" [Dkt. 234 at 29.] Plaintiff's medical records show that he suffered a vertebral fracture during his car accident and that he also has degenerative conditions including osteoarthritis at the L5-S1 vertebrae, thoracic spondylosis, minimal stenosis in his C6-C7 vertebrae with no cord compression, osteophytosis (bone spurs) throughout the spine, and reversal of the normal lordosis consistent with muscle spasm. [Dkt. 234-1 at ¶ 17; Dkt. 234-4 at 160.] Dr. Perez documented lumbar tenderness, reduced range of motion, and moderate pain with movement across multiple spinal regions following a physical exam. [Dkt. 234-1 at ¶ 6; Dkt. 234-5 at 156.] And Plaintiff testified that the pain from his spinal injuries is so severe that it prevents him from standing for more than two minutes at a time and significantly disrupts his sleep. [Dkt. 226-1 at 17-18, 43-44.] Viewing this evidence in the light most favorable to the non-moving party, the Court finds that a reasonable jury could conclude that Plaintiff's spinal pain is a serious medical condition.

"The second element of deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." Donald v. Wexford Health Sources, Inc., 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations and citations omitted). A defendant must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to

10

demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). *See also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Here, the Court finds that a reasonable jury could find that Dr. Perez was deliberately indifferent to Plaintiff's spinal pain. Courts often receive claims alleging that a prison medical provider failed to prescribe specific treatments for chronic pain, such as surgery, a referral to an outside medical provider, or opioid pain medication. Those claims often fail because of the substantial deference courts afford medical professionals in treating prisoners for serious medical conditions. *See*, *e.g.*, *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027 (7th Cir. 2019) (prison doctor was not deliberately indifferent to prisoner's chronic back pain by failing to provide for an outside consult or prescribe opioid medications because the provider prescribed numerous anti-inflammatory pain medications as well as vitamin D, physical therapy, and a back brace). In this case, however, there were prolonged periods when Plaintiff received no medical care whatsoever for his chronic spinal pain, *i.e.*, July 1, 2022, to February 15, 2023, and again from May 4, 2023, to January 19, 2025. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff received no physical therapy, no steroid injections, no prescription strength pain medication, and no over-the-counter pain medication for significant periods of time for pain that was so severe he could not stand for longer than two minutes and was not able to sleep at night. Ordinarily, a prisoner "is not required to show that he was literally ignored" to prevail on an Eighth Amendment claim, but there is evidence in this

11

case that Dr. Perez ignored Plaintiff's pain for approximately two years and four months across these two time periods.[5]

Dr. Perez seeks to avoid a trial on this claim in two ways. First, relies on the expert opinion of Dr. Joseph Fowlkes, who opines:

> It should be noted that medical staff at the prison, or in any setting, can only respond to patient complaints that are actually presented to them. In the correctional setting, that is typically done by the patient submitting a grievance or written request to the medical department about their medical issue. Based on the medical records provided, it does not appear that [Plaintiff] submitted many grievances or written requests to the medical department regarding actual symptoms he was having in his back or complaints of back pain in general. Back pain is one of the most common patient complaints that we treat as primary care providers/internal medicine providers and it is highly variable amongst patients and frequently waxes and wanes in its presentation. Therefore, as a medical provider, one expects the patient to be forthcoming with information regarding their symptoms when they occur. **It does not appear that Mr. Scuteri actually sought medical care on any regular or frequent basis**. When he did seek care or present to the medical staff, the records show that his medical issues, including back pain, were treated appropriately and within the standard of care for the setting/environment.

[Dkt. 234-7 at 3 (emphasis added).]

Contrary to Dr. Fowlkes' factual assessment of Plaintiff's case, the Court observes that from February 2022 to August 2025, Plaintiff submitted fifteen Request for Healthcare forms about pain arising from his spinal injuries. [Dkt. 234-3 at 33, 42, 55; Dkt. 234-5 at 152, 159, 164, 168, 170, 171, 174, 203, 224, 229, 237, 239, 240, 241, 242.] He also filed this lawsuit and a Motion for Preliminary Injunction—both of which requested additional medical care for his spinal injuries. [Dkt. 107.] Thus, Dr. Fowlkes's opinion is based on a factual premise that is flatly contradicted by the record. While courts often defer to the medical opinions of physicians

---

[5] As the Court noted in a previous Order, there was also a substantial period after the Preliminary Injunction went into effect in January 2025, during which Plaintiff's order for pain medication was inexplicably terminated due to turnover and administrative oversight. [Dkt. 253.] However, Plaintiff has already been compensated for that period of time, and there is no evidence that Dr. Perez had actual knowledge that Plaintiff was not receiving his medication. *Id.*

and other medical professionals, Dr. Perez may not avoid a trial by relying upon an expert medical opinion that premised on an inaccurate factual assessment of the record.

Second, Dr. Perez argues that Plaintiff could have purchased Tylenol or ibuprofen through the commissary but instead spent his money on "junk food items." [Dkt. 258 at 15.] The Court has reviewed Plaintiff's commissary records, which reveal that many of his purchases included food, vitamins, heartburn medicine, toiletries, nail clippers, shoelaces, office supplies, and other sundries. [Dkt. 258-2.] Over a period of three years and six months, Plaintiff spent $1,962.79 at the commissary. *Id.* That means he spent approximately $46.73 per month. *Id.* He did purchase "junk food" from time to time, but many of his purchases were for nutritional, albeit processed, food including noodle soup, bagels, meat, fish, cheese, nuts, rice, peppers, garlic, onion, and hot sauce. *Id.* The record does not establish the cost of purchasing ibuprofen or Tylenol through the commissary. Plaintiff requires numerous tablets of these medications every day (nine 200 mg tablets of ibuprofen, or about four to five 325 mg tablets of Tylenol), and it is not clear that he could have purchased both his pain medication and other essentials of daily life from the commissary on a budget of $46.73 per month, even if he did not make any food purchases.

To the extent the Medical Defendants argue that Plaintiff's failure to purchase any pain medication from the commissary proves that his pain is not as severe as he claims, the Court notes that this would be a credibility argument that may be appropriate at trial but not on summary judgment. At summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. *Khungar*, 985 F.3d at 572–73. Plaintiff testified about the extent of his pain arising from his spinal injuries, and that is enough to establish those subjective symptoms as true for the limited purpose of this Order in this case.

13

In sum, viewing the evidence in the light most favorable to Plaintiff, the non-moving party, a jury could reasonably conclude that Plaintiff's spinal pain is a serious medical condition and that Dr. Perez was deliberately indifferent to that condition.  Accordingly, Dr. Perez's Motion for Summary Judgment is **DENIED**.

### IV. Conclusion

The Medical Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's claims against Centurion are **DISMISSED WITH PREJUDICE**. Plaintiff's claims against Dr. Perez shall proceed.

The Court will not terminate Centurion Health Services LLC as a Defendant on the Docket at this time due to Centurion's upcoming deadline to pay the fees awarded at Docket No. 264, and its ongoing reporting requirements pursuant to the Court's order at Docket No. 253.

SO ORDERED.

Dated:  30 MAR 2026

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

14